# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————

RFE/RL,

Plaintiff-Appellee,

v.

UNITED STATES, *et al.*,

Defendants-Appellants.

————————

MIDDLE EAST BROADCASTING NETWORKS,

Plaintiff-Appellee,

v.

UNITED STATES, *et al.*,

Defendants-Appellants.

————————

## APPELLANTS' RESPONSE TO EMERGENCY PETITIONS FOR
## INITIAL HEARING EN BANC AND FOR REHEARING EN BANC

————————

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
ABIGAIL STOUT
  *Attorneys*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1838*
  *daniel.tenny@usdoj.gov*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

**A.    Parties**

Plaintiff in number 25-5150 is Middle East Broadcasting Networks, Inc. Plaintiff in number 25-5151 is Radio Free Asia.  Defendants in both cases are the United States of America; the United States Agency for Global Media; Kari Lake, in her official capacity as Senior Advisor to the Acting Chief Executive Officer ("CEO") of the U.S. Agency for Global Media; Victor Morales, in his official capacity as Acting CEO; the Office of Management and Budget; Russell Vought, in his official capacity as Director of the United States Office of Management and Budget; the United States Department of Treasury; and Scott Bessent, in his official capacity as United States Secretary of the Treasury. Reporters Committee for Freedom of the Press filed a motion for leave to file an amicus brief.

Plaintiff in number 25-5158 is RFE/RL, Inc.  Defendants are Kari Lake, in her official capacity as Senior Advisor to the Acting CEO of the U.S. Agency for Global Media; Victor Morales in his official capacity as Acting CEO of U.S. Agency for Global Media; and the U.S. Agency for Global Media.

## B.    Rulings Under Review

Appellants have appealed the order granting Radio Free Asia and Middle East Broadcasting Networks' motions for a preliminary injunction, entered in *Radio Free Asia v. United States*, No. 25-cv-907 (D.D.C.), as Dkt. No. 25 and in *Middle East Broadcasting Networks, Inc. v. United States*, No. 25-cv-966 (D.D.C.), as Dkt. No. 23.  Appellants have also appealed the memorandum order granting Radio Free Europe's motion for temporary restraining order, entered in *RFE/RL, Inc. v. Lake*, No. 1:25-CV-799 (D.D.C), as Dkt. No. 48.

## C.    Related Cases

These cases have not previously been before this Court. There are three other related cases currently pending in the United States District Court for the District of Columbia and this Court.  *See Open Technology Fund v. Lake*, 25-cv-840 (D.D.C.); *Widakuswara v. Lake*, 25-cv-1015 (D.D.C.), *on appeal* No. 25-5144 (D.C. Cir.); *Abramowitz v. Lake*, 25-cv-887 (D.D.C.), *on appeal* No. 25-5145 (D.C. Cir.).

*/s/ Daniel Tenny*
Daniel Tenny

## INTRODUCTION AND SUMMARY

The Supreme Court has recently issued an order addressing, in a stay posture, the question whether a district court can compel the government to make payments under a grant agreement on the ground that the grant was unlawfully terminated.  The Court answered that question in the negative, holding that such relief would only be available in the Court of Federal Claims.  Even if plaintiffs were correct that something unusual about their case warranted a different result, such case-specific arguments plainly would not warrant review by the full Court, much less review by the Court on the highly expedited timeline that plaintiffs demand.

But in any event, plaintiffs are mistaken because there is no material distinction between their case and the one that the Supreme Court just resolved.  Plaintiffs emphasize the specificity of the statutes that instruct the government to enter into grant agreements with them.  But as the panel explained, the argument that the statute compels the government to enter into grant agreements with plaintiffs is distinct from the argument that those grant agreements compel the government to make monetary payments.  That second argument is identical to the argument that the Supreme Court recently concluded must be presented to the Court of

Federal Claims, as the panel correctly determined.  The petitions for initial

hearing en banc and rehearing en banc should be denied.[1]

## STATEMENT

These related cases arise from a series of actions taken by the U.S.

Agency for Global Media with regard to grant agreements with funded

entities.  The grant agreements between the Agency and two grantees,

Radio Free Asia and Middle East Broadcasting Networks, have been

terminated, and those two plaintiffs have challenged their terminations

and requested, and received, an order requiring the government to make

payments under those grant agreements.  A panel of this Court, by a 2-1

vote, stayed that order.  *See* Order, *Widakuswara v. Lake*, Nos. 25-5144, 25-

5145, 25-5150, 25-5151 (D.C. Cir.), *reprinted at Middle East* Add. 4.  Those

two entities have filed a petition for rehearing en banc, seeking review of

that stay decision.

A third grantee, RFE/RL (commonly known as Radio Free Europe),

had its grant terminated, but that termination was then rescinded.  Because

_____

[1] We are filing this identical response to both the petition for initial hearing en banc filed in *RFE/RL v. Lake*, No. 25-5158 (D.C. Cir.), and the petition for rehearing en banc filed in *Middle East Broadcasting Networks v. United States*, Nos. 25-5150, 25-5151 (D.C. Cir.).

the federal government had been operating under a continuing resolution that did not cover the full fiscal year, the Agency and Radio Free Europe had not entered into a master grant agreement for fiscal year 2025. Because no grant agreement was in place as of the beginning of April, the parties were engaged in negotiations over a master grant agreement. As relevant here, the parties had not entered into a short-term agreement for the month of April 2025. The district court ultimately ordered the government to enter into a new agreement for that period based on the terms and conditions that had been agreed to for previous months, despite the Agency's desire to negotiate new terms and conditions. The district court also ordered the government to make payment under that new agreement. The government has complied with the requirement that it enter into a new agreement—though it still seeks a stay of that aspect of the order, which could have a continuing effect on the relationship between the parties—but this Court issued an administrative stay before the government made the required payment of approximately $12 million. The government's stay motion as to that order is still pending, but Radio Free Europe has filed a petition for initial en banc review.

# ARGUMENT

i. *The government is likely to succeed on the merits of its jurisdictional Tucker Act claim.*

Plaintiffs seek en banc review of the question whether a district court can order a federal agency to make payment as contemplated by a grant agreement. But the Supreme Court has recently resolved this issue. In *California v. Department of Education*, 145 S. Ct. 966 (2025), the Court issued a stay pending appeal of an order "enjoining the Government from terminating various education-related grants." *Id.* at 968. The Court concluded that such claims were contractual claims that must be brought in the Court of Federal Claims under the Tucker Act. As the panel recognized, "[t]hat reasoning controls this case." Op. 6.

The thrust of plaintiffs' contrary claim is that because appropriations statutes list certain entities by name, those entities have a statutory entitlement to the funds that prevents the Agency from terminating their grants. But as the panel observed, the statute itself "at most would require [the Agency] to enter grants obligating the appropriated amounts to the networks." Op. 7. The separate dispute over whether grants were

properly terminated, or whether money should be paid under them, is contractual in nature and thus belongs in the Court of Federal Claims.

1.  The statutory scheme makes clear that it requires the government to enter into grant agreements, which may be terminated under certain circumstances, such that any order to pay money constitutes enforcement of those grant agreements rather than of the statute directly.  The International Broadcasting Act of 1994 vests the Agency's Chief Executive Officer with the authority to "make and supervise grants and cooperative agreements for broadcasting and related activities" and to "allocate funds appropriated for international broadcasting activities among the various elements of the [Agency] and grantees, subject to reprogramming notification requirements in law for the reallocation of funds." 22 U.S.C. §§ 6204(a)(5), (a)(6).

Appropriations statutes make funding available for grant awards.  In particular, Congress provided that appropriated funds should be "allocated" in accordance with a table, and the referenced table specifies amounts to be allocated to particular entities, including Radio Free Asia, Middle East Broadcasting Networks, and Radio Free Europe.  Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, 138 Stat. 460, 735;

*see also* Continuing Appropriations Act, 2025, Pub. Law No. 118-83, 138 Stat. 1524 (2024); American Relief Act, 2025, Pub. Law No. 118-158, 138 Stat. 1722 (2024); Congress's Full-Year Continuing Appropriations and Extensions Act, 2025, H.R. 1968, 119th Cong. § 1101(a) (2025). In sum, the International Broadcasting Act and the appropriations statutes create a scheme by which Congress appropriates money for certain entities and then the Agency administers that money via grant agreements. *See* Op. 6.

Thus, as the panel explained, although the appropriations statutes "allocate funds for the networks," those funds "may be disbursed only as grants." Op. 7. Thus, "[i]f those statutes created any entitlement for the networks at all, they at most would require [the Agency] to enter grants obligating the appropriated amounts to the networks." *Id.* Those grant agreements give rise to "a new obligation . . . to make *monthly* payments to the networks—the very obligation prompting this highly expedited stay litigation." Op. 8. And that obligation can be enforced only in the Court of Federal Claims.

It is therefore incorrect that "if the grant agreements never existed at all, [the Networks] would have the same claims against [the Agency.]" Dissent 14-15. The error in that analysis is highlighted by the district

court's order in Radio Free Europe's case. Rather than ordering the government to make payment because payment was compelled by the statute, the court ordered the government to enter into a new grant agreement for April 2025, and then ordered the government to make payment under that grant agreement. The court's implicit recognition that the payment could be compelled only if a new grant agreement was entered into cannot be reconciled with the court's insistence that Radio Free Europe's "entitlement to the funds . . . does not depend principally on the grant agreement." *RFE/RL* Stay Mot. Add. 9. The grant agreement was a necessary prerequisite to the obligation to pay funds, which also illustrates the error in the dissent's analogy of this case to one in which a single action would violate both a statute and a contract, Dissent 16; any obligation to make a given payment does not arise under the statute, but only under the contract.

2. As the Supreme Court recognized in *California*, when a grantee urges that the government has breached a grant agreement by unlawfully terminating the grant, review is appropriate only under the Tucker Act, which vests the Court of Federal Claims with jurisdiction over claims against the United States "founded . . . upon any express or implied

contract with the United States." 28 U.S.C. § 1491(a)(1).  This Court has long "interpreted the Tucker Act as providing the exclusive remedy for contract claims against the government."  *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992); *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (explaining that if a claim against the United States is contractual "at its essence," then district courts have no power to resolve it).  The determination whether a claim is "founded upon" a contract hinges on "the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought."  *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)).

That inquiry is straightforward here.  The Networks have never disputed that their grant agreements are contracts for these purposes.  And the second prong of the *Megapulse* test, related to the relief sought, also favors jurisdiction in the Court of Federal Claims.  The Networks plainly seek the payment of money as specific performance of a payment obligation that they attribute to their grant agreement.  The dissent points to the Networks' requests for injunctive and declaratory relief as proof that no count "seeks money damages for breach."  Dissent 16.  But this Court has warned against "disguising a money claim as a claim requesting a form

8

of equitable relief." *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995). And here, the Networks are ultimately asking the government to keep paying under the grant agreements. The Networks' funding is the only issue in the Networks' case, as the dissent's explication of the various forms of relief sought makes clear. *See* Dissent 17 (explaining that the Networks are seeking a declaration that will ensure the Agency disburses grant funds and an injunction against withholding funds). In this respect, too, this case is on all fours with *California*, where the Department of Education grantees also sought "equitable relief in the form of reinstatement of the . . . grants" in district court and sought to enjoin defendants from implementing or reinstating the termination of any grants. *California v. U.S. Dep't of Educ.*, No. CV 25-10548-MJJ, 2025 WL 760825, at *1 (D. Mass. Mar. 10, 2025).

3. At bottom, the Networks' entire case is about their funding and the grant money they say they are due under the grant agreement. Plaintiffs' contrary argument that the source of their claim is statutory because the appropriations statute allocates funding for the Networks by stating that certain money "shall be allocated" to them does not and cannot transform their contractual claims into statutory ones.

Although mentioning a grantee by name in an appropriations statute may render the Agency grant process non-competitive (unlike the discretionary grants at issue in *California*) or may permit the grantee to argue that it has a statutory right to a *grant* in order to receive these congressional funds, nothing in the appropriations statute gives the grantee an unqualified right to the funds. Under the Networks' and the dissent's theory, the termination of any grant would constitute a statutory violation solely because the grantee would therefore not receive appropriated funds—no matter how valid the reason for the termination. And any grant termination would constitute an impoundment of funds and expose the Agency to liability for a constitutional violation. Op. 18 (calling the Agency's grant termination an "impoundment of those funds"). This theory would render the Agency unable to terminate a grant agreement no matter the circumstance.

But that cannot be correct. As the dissent acknowledges, the statute expressly allows the Agency to terminate a grant for "'failure to comply with the requirement that the grant funds be used only for activities consistent with' the statute." Dissent 13 (quoting 22 U.S.C. § 6208(c)(5)). But the dissent was wrong to suggest that this is the "only" ground for

termination. *Id.* Rather than mandating payment upon the satisfaction of certain statutory prerequisites, the statute plainly contemplates that there will be a "grant agreement" that contains various "limitations and restrictions." 22 U.S.C. § 6208(c). And the appropriations act instructs the Agency to exercise its grantmaking authority in making appropriated funds available to particular grantees. *See* Pub. L. No. 118-47, 138 Stat. at 735 (directing Agency to make funds "available in accordance with the principles and standards set forth" in, among other statutes, 22 U.S.C. § 6204, which authorizes the Agency to "make and supervise grants and cooperative agreements for broadcasting and related activities," *id.* § 6204(a)(5)). Plaintiffs cannot plausibly contend that they need not enter into a grant agreement at all, or that they are entitled to the funds even if they do not abide by the agreement's terms. The question whether termination is permitted under those terms is one for the Court of Federal Claims.

4. The various other counterarguments advanced by the Networks and the dissent are without merit. Contrary to the Networks' contention, the panel's analysis did not conflate jurisdiction and the merits. *Middle East Pet.* 10. This Court's cases require assessing the source of a plaintiff's

rights, which requires a close analysis of what the statute requires and what rights arise only from the contract. That is all the panel did here.

The Networks' hypothetical about a "a federal funding recipient whose contract was terminated based on race," *Middle East* Pet. 8-9, injects a constitutional question that has no relevance to whether the APA claim that the district court resolved here, like the one that the Supreme Court addressed in *California*, can proceed. The dissent's observation (at 14) that plaintiffs brought constitutional claims here—which were not resolved, other than a Take Care Clause claim and separation of powers claim that merely mirror the statutory claim, *see* Op. 9 (citing *Dalton v. Specter*, 511 U.S. 462, 472–74 (1994))—similarly does nothing to bolster the APA claim that the district court actually resolved.

This Court's decision in *Maryland Department of Human Resources v. Department of Health and Human Services*, 763 F.2d 1441 (D.C. Cir. 1985), involved a dispute about the administration of a program that provided "block grants to participating states for social services." *Id.* at 1444. This Court distinguished federal grant programs of this kind from ordinary contractual arrangements that might give rise to Tucker Act jurisdiction. *See id.* at 1449 ("[W]e have found no case in which the contract claims

provision of the Tucker Act has been held applicable to a dispute between a state and the federal government over the 'contractual' rights and obligations of these 'parties' to a federally funded program.").  This case far more closely resembles the grants at issue in *California* than a block-grant program for states.

The Supreme Court's resolution of *Department of State v. AIDS Vaccine Advocacy Coalition*, 145 S. Ct. 753 (2025), does not help the Networks either because the Supreme Court declined to stay the temporary restraining order with no reasoning or explanation.  The relevant opinion is the Supreme Court's subsequent stay order in *California,* from which the panel opinion logically follows.

  ii.   *The remaining factors favor denying a stay.*

Absent a stay, millions of dollars of taxpayer dollars will flow from the Treasury without any security or assurances.  *See* Op. 10 (explaining that Radio Free Asia and Middle Eastern Broadcasting Networks "have attested they intend to spend these funds 'immediately'"); *see California*, 145 S. Ct. at 968-69 (noting "respondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed" and the district court "declined to impose a bond").

On the other side of the ledger, although the district court lacks jurisdiction to adjudicate disputes over grant terminations and to order the government to pay money under a contract, the grantees are not left without relief. The Court of Federal Claims has always been and remains the proper and available forum for the Networks' claims. Moreover, the public has an interest in the public fisc being protected by requiring orderly resolution of these claims in the appropriate forum provided by Congress before money is irrevocably lost.[2]

iii. *Rehearing en banc is not warranted.*

This case in any event plainly does not satisfy the stringent standard for review by the full Court. This Court has made clear its overall approach to determining when a claim is contractual such that it falls within the Tucker Act's purview. Courts should examine (1) the source of the rights and (2) the relief sought, and should be on the lookout for artful pleading that seeks to avoid the Court of Federal Claims' jurisdiction on one hand while acknowledging that relief that may lead to the payment of

---

[2] Radio Free Europe's posture implicates additional and different equitable and public interest factors, which we describe in our stay papers in that case.

money does not automatically invoke the Tucker Act. *See, e.g., Department of Education v. California*, 145 S. Ct. 966 (2025); *Bowen v. Massachusetts*, 487 U.S. 879, 900-01 (1988); *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); and *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992). Perhaps most relevant, the Supreme Court recently issued an opinion on this subject in *California*, which the panel opinion followed.

Plaintiffs' arguments that a different result is warranted here from the Supreme Court's recent decision in *California* turn on the details of the statutory provisions at issue here and their allegations about the government's conduct in this case. Their arguments are wrong, as discussed above. But for present purposes, it suffices that they present fact-specific arguments that do not warrant review by the full Court. The panel carefully analyzed those arguments and issued a reasoned decision, and no further review is warranted.

The timing on which plaintiffs seek relief underscores the inappropriateness of further review. To the extent that there are issues worthy of the full Court's attention, the Court would benefit from sufficient time to consider the issues and reach a decision that could provide

guidance in future cases.  There is no reason to issue an en banc ruling based on a highly expedited request from relief from a stay decision.

    *iv.* *Radio Free Europe's petition for initial en banc should be denied*.

Although this Court has granted an administrative stay, the government's petition for a stay pending appeal in the case brought by Radio Free Europe has not been resolved.  Radio Free Europe has provided no basis for the extraordinary remedy of initial hearing en banc.

Much of Radio Free Europe's petition echoes the points made in the rehearing petition, and requires no further discussion except to point out that Radio Free Europe appears to concede that the reasoning of the panel opinion counsels in favor of a stay of the portion of the district court's order in their case that compels the payment of money.  *See* Pet. 1 (arguing that the order to disburse funds "is now virtually certain to be stayed under the panel's reasoning in *Widakuswara*").  As to the other part of the stay motion, Radio Free Europe does not even suggest that any issue warranting review by the full Court is presented.  That aspect of the court's order should be stayed for the reasons given in the government's stay papers.

## CONCLUSION

For the foregoing reasons, this Court should deny the petitions for en banc review.

Respectfully submitted,

YAAKOV M. ROTH
   *Acting Assistant Attorney*
     *General*

ERIC D. MCARTHUR
   *Deputy Assistant Attorney*
     *General*

MARK R. FREEMAN

*s/ Daniel Tenny*
DANIEL TENNY
ABIGAIL STOUT
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7215*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-1838*
   *daniel.tenny@usdoj.gov*

MAY 2025

# CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit set out in this Court's order because it contains 3,307 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

_/s/ Daniel Tenny_
Daniel Tenny